*First Judicial District.*

## In the District Court of Philadelphia.

### *In re* ORWIG.

1. Gross misconduct on the part of an attorney acting in his official capacity, is a sufficient cause for striking him from the roll, although the person whom he injures be not a client.

2. Good faith, more than skill or intellect, is essential to the profession of the law.

**Rule to show cause why Saml. H. Orwig should not be stricken from the roll of attorneys.**

Opinion delivered January 10, 1874, by

HARE, P. J. This is a rule granted at the instance of Morris Stroud, to show cause why Samuel H. Orwig should not be stricken from the roll of attorneys in this court. The testimony is long and complicated,

embracing a period of several years. Without entering into a minute detail of the facts, it is enough to say, that the respondent, Orwig, was the attorney at law and in fact, of Leonard Benkert, to collect a second mortgage of $22,100. The premises were sold by the sheriff, and the petitioner, Stroud, became interested in the completion of the sale, and in having the title made to him as the purchaser. He gave Orwig a fee of $300, and soon afterwards a note for $2,900, which was discounted, and the proceeds paid to Orwig, who signed the following receipt:

Received, Philadelphia, July 1st, 1871, of Morris R. Stroud, three thousand dollars, on account of purchase of Seventh Street Opera House, and agree to take a mortgage in favor of Mr. Leonard Benkert, at two years, for sixteen thousand dollars, the balance of purchase money.

Signed,        SAMUEL H. ORWIG,

$3,000                       Attorney in fact for Leonard Benkert.

The sale fell through in consequence of Orwig's wilful failure to produce a set of searches which were in his keeping as attorney for the mortgagee. It then became his duty to repay the proceeds of the note, or if he had any doubt on this point, to hand the money over to Benkert, and leave him to adjust the question of right with Stroud. Instead of taking either course, he kept the money, and, as we must infer from the evidence and his silence, used it for his own purposes. His conduct in this regard is entirely without excuse, because Benkert, who had been in Europe, returned, and made repeated demands for the money, personally and in concert with Stroud, which were all evaded or refused. Orwig did not then deny his liability, and on the contrary, offered to give Stroud a mortgage for $3,200, in liquidation of the debt, which was declined.

Orwig also obtained $625 from the owner of the mortgaged premises as a contribution to the sum of $1,250, which was to be paid by Benkert to avert a sale under the first mortgage, but withheld the money; and Benkert's nephew, who was acting for his uncle, was obliged to raise the whole amount from other sources.

After the lapse of two years, Benkert and stroud applied to this court for redress, and an order was made that Orwig should pay Benkert the sum of $625, which he had received from the terre tenant, and also the $2,900, due to Stroud, with interest from August 7, 1871 ; it being agreed between Stroud and Benkert, that the latter amount should be handed over forthwith to Stroud. Orwig did nothing towards complying with this order until September, 1873, when he gave Benkert $3,525, and Benkert immediately returned $1,900 to Orwig, with the understanding that Orwig should appear and act for him in any suit that might be brought by Stroud to recover his proportion of the fund.

It results from this brief summary of the evidence, that Orwig did a manifest wrong to Stroud, and was also guilty of a gross breach of the professional obligation which he owed to Benkert. But it is contended on his behalf, that he was not Stroud's attorney, and that as Benkert was

content to take a part payment in satisfaction, our jurisdiction is at an end, and we cannot punish the offence which he condoned. The premise on which this argument rests, seems to be unfounded, and would not justify the conclusion, if true. When interrogated under oath, Orwig refused to admit that he had received a fee from Stroud, and persisted in this denial until confuted by the production of Stroud's check, with his endorsement. It appears from Casselberry's deposition, that the check was given to him on the faith of his undertaking "to get the title through;" and although he now alleges that he was only retained to oppose the rule to set aside the sheriff's sale, we cannot regard his memory as trustworthy. The inquiry is not essential to the determination of the matter in hand. Gross misconduct on the part of an attorney acting in his official capacity, is a sufficient cause for striking him from the roll, although the person whom he injures be not a client. That such an offence was committed in this instance, is clear to every member of the court. It is not the case of one, who having collected money in good faith, uses it for some pressing need, in the delusive hope of being able to ·make the default good in a few days or weeks. What the evidence discloses is a deliberate design conceived and executed with the art of an adept in intrigue. We are compelled to believe that the respondent obtained the note and had it discounted, not for the purpose of employing the money in the way contemplated by Stroud, or of handing it over to Benkert, but with the design of converting it to his own use, to the entire frustration of the just expectations of both.

If we leave Stroud out of view, and consider the respondent's conduct solely in the aspect of his relation to Benkert, we shall be led to the same result. It is immaterial that Benkert settled the case and withdrew the accusation which he had made. In bringing such a charge against an attorney and substantiating it by evidence, he imposed an obligation on the court which no change of purpose on his part could impair. The bar and the community became parties in interest, and entitled to require that justice should have its course. The question is not one of *meum* and *tuum;* whether Stroud or Benkert shall have a few dollars more or less; it is, have we judicial knowledge that Samuel Orwig is wanting in good faith; which more than skill or intellect, is essential to the profession of the law. As the eloquence and learning of the lawyer are the sword and buckler of his client, so his honesty should be the staff. There can be no more melancholy spectacle than that which this case presents, of an attorney using a perverted ingenuity to entangle the interests confided to his care. It would be a neglect of duty not to visit such an offence as it deserves. The court directs that the rule be made absolute, and that a certified copy of the rule be sent to the court of common pleas, in view of the near future in which all the city courts will form co ordinate branches of the same tribunal.

*George L. Crawford*, Esq., for Morris R. Stroud; *Thos. A. Gummey* and *David W. Sellers*, Esqs , for Orwig.